THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* MORRIS S. TREMAINE, as Comptroller of the State of New York, Defendant.*

Third Department, June 15, 1939.

* Modified and as modified affirmed, 281 N. Y. 1.

*John J. Bennett, Jr.,* Attorney-General [*Henry Epstein,* Solicitor-General, *Wendell P. Brown* and *John C. Crary, Jr.,* Assistant Attorneys-General, of counsel], for the plaintiff.

*Arthur A. Ballantine* [*Cloyd Laporte, Charles C. MacLean, Jr., Rupert Warren, Richard E. Manning, Lyman M. Tondel, Jr.,* of counsel], for the defendant.

*John T. DeGraff,* for the Association of State Civil Service Employees of the State of New York, *amicus curiæ.*

*Herman E. Cooper* [*William Sardell* of counsel], for the State, County & Municipal Workers of America, *amicus curiæ.*

HEFFERNAN, J. This is a submission upon an agreed statement of facts under sections 546–548 of the Civil Practice Act of a controversy between the People of the State of New York and the Comptroller of the State. While the People and the Comptroller are the nominal parties the real parties in this case are the Governor on one side and the State Legislature on the other.

In order that a final judgment may be pronounced by the court of last resort on the questions involved we are impelled to act with celerity in the formation of our judgment and in stating the reasons which lead us to a conclusion. We acknowledge our indebtedness to the very able counsel on both sides who have aided us materially both in their arguments and in their briefs.

The age old contest between the executive and the legislative departments of the government for control of the public moneys culminated in the adoption of former article IV-A of the Constitution at the general election in 1927. In the Constitutional Convention of 1938 the executive budget provisions then contained in article IV-A of the Constitution were placed with other provisions relating to State finances, in the present article VII, sections 1–7, inclusive, which became effective on January 1, 1939. It would serve no useful purpose to quote these various sections verbatim. Briefly they provide that the Executive shall each year prepare and submit to the Legislature a budget containing a complete plan of proposed expenditures and of the moneys and revenues estimated to be available therefor, together with an explanation of the basis of his estimates and recommendations of such legislation as he may deem necessary to provide revenues sufficient to meet the proposed expenditures. In order to aid the Governor in the preparation of the budget the head of each of the State depart-

ments except the legislative and judicial is required to submit to him itemized estimates of the financial needs of his department. The Governor is required to hold hearings on the departmental estimates to which representatives of the proper committees of the Legislature should be invited. Itemized estimates of the financial needs of the Legislature and of the judiciary are to be transmitted to the Governor for inclusion in the budget without revision by him. At the time of the submission of the budget the Governor is required to submit to the Legislature a bill or bills for all proposed appropriations contained in the budget. These bills when passed by the Legislature are to become law immediately without further action by the Governor except that appropriations for the Legislature and the Judiciary and separate items added to the Governor's bills by the Legislature shall be subject to his veto.

This controversy centers around section 4 of article VII, the pertinent provisions of which are: " The Legislature may not alter an appropriation bill submitted by the Governor except to strike out or reduce items therein, but it may add thereto items of appropriation provided that such additions are stated separately and distinctly from the original items of the bill and refer each to a single object or purpose. None of the restrictions of this section, however, shall apply to appropriations for the Legislature or Judiciary." On January 30, 1939, the Governor submitted to the Legislature a budget containing a complete plan of expenditures proposed to be made before the close of the ensuing fiscal year and all moneys and revenues estimated to be available therefor. This budget was prepared by the Governor after the receipt by him of estimates and information from the head of each department of the State government other than the Legislature and the Judiciary. It contained in addition itemized estimates of the financial needs of the Legislature certified by the presiding officer of each house and of the Judiciary certified by the Comptroller, both without revision by the Governor. Simultaneously with the submission of this budget the Governor transmitted to the Legislature four appropriation bills, one containing general appropriations for the support of the government, a second containing appropriations for the legislative and judicial branches, a third containing provisions for unemployment relief, and a fourth containing provisions for building construction. Only the first of these bills is involved in the present controversy.

These appropriation bills were referred to the Ways and Means Committee of the Assembly and on April 25, 1939, that committee amended, and reported to the Assembly, as so amended, the general appropriation bill for the support of government. In amending

the bill the Ways and Means Committee struck out substantially every item contained in part 1 of the bill as submitted by the Governor and substituted therefor a single item of appropriation to each of the various departments, or divisions or bureaus of departments, combining in such item appropriations for expenses of maintenance and operation, personal service, travel outside of the State and the purchase or exchange of automobiles. In some instances the committee substituted such a single item of appropriation plus certain items of appropriation for special functional activities of the department, division or bureau. These items are those commonly referred to as " lump sums appropriations." On April 28, 1939, the Legislature passed the bill as so amended by the Ways and Means Committee and it has become chapter 460 of the Laws of 1939. On May 2, 1939, certified copies of the bill were transmitted to the Governor and to the Secretary of State. On May 12, 1939, the Governor transmitted a message to the Legislature in which he said that he was allowing the bill to become law without affirmative action on his part " for the sole purpose of having this issue of constitutionality presented to the courts for judicial decision."

As we have seen, the powers of the Legislature in respect to annual appropriation bills are clearly defined in section 4 of article VII of the Constitution which we have quoted. The Legislature is forbidden to alter any appropriation bill submitted by the Governor except to strike out or reduce items therein or to add thereto items of appropriation provided that such additions are stated separately and distinctly from the original item of the bill and refer each to a single object or purpose. These restrictions do not destroy the ultimate power of the Legislature over appropriations. It still has control of the purse strings as to public expenditures. It may, by striking out, refuse any appropriation or it may reduce the amount thereof. It may in the budget bill make amounts available for purposes not provided for but it must exercise these powers within the plan of the budget appropriation bill. The prohibition against alteration in itself is necessary to give effect to other limitations. If the appropriation bill submitted by the Governor can be reconstructed in altered form it becomes impossible for the Legislature to act as the Constitution has directed by reducing and striking out items thereof. It is obvious from an examination of the bill passed by the Legislature that it goes much further than striking out items or reducing items or adding items of appropriation. In effect it destroys the executive budget completely and substitutes therefor a legislative bill. In other words, the Legislature completely emasculated the Governor's appropriation bill. This is strikingly illustrated in many instances

in this bill where functions and purposes set up in the appropriations bills have been combined so as to lose their separate identity and new provisions substituted therefor. It is impossible to determine how much the appropriations for such purposes have been reduced or indeed whether they have been stricken out and a larger amount made available for other purposes. This is contrary to the spirit and purpose of the Constitution which had for its object the abolition of the old method of making appropriations. The authority to strike out items and to add items manifestly was not intended to permit the striking out of all items of the bill and the substitutions of items covering the same objects and purposes for which the original items were appropriated. The provision in the Constitution for additions by the Legislature contemplates the appropriation of moneys for items not specified in the Governor's bills. Certainly the authority to add items was clearly intended to be limited to such items as the Legislature might wish to appropriate for objects and purposes not provided for in the bill as submitted to it.

It is not possible in the time at our disposal to make a detailed analysis of each of the departmental and divisional appropriations dealt with in the bill. One typical example is the provision for maintenance and repair of improved State highways. The original bill contained appropriations for the general purposes in two separate items totaling $10,500,000. The first of these was for $8,500,000, to be expended in accordance with the Highway Law and chapter 910 of the Laws of 1936, for the maintenance and repair of improved State highways, including necessary bridge construction and repair of roads and bridges on Indian reservations and other special construction, maintenance and operation and repair work. This was based upon complete schedules for each of the ten highway districts, showing the specific amounts for personal service, equipment, machinery, etc., required for particular work, from which the total was made up. The second item was for an additional $2,000,000, stated to be in lieu of the ten per cent which may be retained from appropriations made for maintenance and reconstruction of improved highways as provided for by section 262 of the Highway Law to supplement other appropriations for highway purposes. The Legislature substituted for these items an entirely different legislative item reading as follows:

" For maintenance and repair of improved State highways, including necessary bridge construction and repair, roads and bridges on Indian reservations, removal of snow therefrom, other special construction, Interstate Bridges, maintenance and operation and repair work, including personal service. The amount hereby appropriated, $10,000,000, is to be expended in accordance with the

provisions of the Highway Law; chapter 910 of the Laws of 1936 as amended; section 121-A of the Canal Law; the maintenance and repair of structures placed under supervision of the Department of Public Works. The maintenance, repair and construction herein authorized may be either by contract or directly by the department."

The appropriation substituted by the Legislature constitutes a complete rewriting of the executive appropriations for maintenance of highways which were based upon estimates of needs as required by law and gave effect to a plan of expenditure already prescribed by statute. While the lumped legislative appropriation totals less than the Governor's appropriations it is impossible to tell where or how the reduction or reductions have been made nor is there left any control over the expenditure of the single amount appropriated other than the statement of general purposes. Gone are the separate schedules for highway districts. In their place the Legislature has substituted the uncontrolled power of the department head.

Counsel for both parties have pressed upon our attention the case of *People* v. *Tremaine* (252 N. Y. 27). That case is not decisive of any of the issues involved in this case. The only point actually decided in the *Tremaine* case was that the function of segregation was one which could not properly be conferred upon particular members of the Legislature.

In this case we see no partisan issue. It is apparent to us that both parties are actuated by the purest motives. The Governor is seeking to protect the integrity of the budget which he believes is necessary for the proper conduct of the business of government. The Legislature is motivated by the desire to alleviate the burden of taxation which is constantly pressing heavier and heavier upon our people. Nothing that we have said is to be understood as indicating that we have any doubt that the ultimate control of public spending rests with the Legislature. That body has full authority to bring about any economy or economies that it desires. It may strike out any items in the Governor's bills that it deems unessential; it may reduce any items that it considers to be excessive. It may not, however, alter the Governor's bill in other respects except to add items for objects or purposes additional to those contained in the bill. It may not discard the executive budget and write one of its own. That constitutes nullification of the constitutional provision.

Judgment is directed for the plaintiff in accordance with the terms of the stipulation, without costs.

Bliss and Schenck, JJ., concur; Hill, P. J., dissents, with an opinion in which Crapser, J., concurs.

Hill, P. J. (dissenting). The Legislature has enacted appropriation bills which the Governor asserts to be in violation in many particulars of article VII of the new State Constitution. The controversy has been submitted to this court upon an agreed statement of facts, under the provisions of the Civil Practice Act. (§§ 546–548.) The action is brought by the Attorney-General in the name of the People of the State of New York, to restrain the Comptroller from auditing vouchers or drawing his warrants for the funds made available by these bills, allowed by the Governor to become laws without action upon his part. It being asserted that portions of the laws are unconstitutional, a declaratory judgment is asked which will determine as to the validity and constitutionality thereof.

The respective powers of the Executive and the Legislature under the provisions of the Constitution relative to the executive budget are involved. It is suggested in a general way by the Attorney-General that the executive budget provisions of the Constitution changed the law of appropriations so that now they originate with the Governor, aided by his department heads, and that the veto power in turn is transferred from the Governor to the Legislature. Upon the other hand, the defendant argues that the Legislature still is supreme, and that the change had to do only with the machinery and methods.

The budget provision of the Constitution was adopted first on November 8, 1927, and article IV-A became effective as to appropriations made beginning January 1, 1929. The department heads of the State government were required, on or before October 15, 1928, to submit to the Governor itemized estimates of appropriations to meet the financial needs of the respective departments (the Legislature and the Judiciary were exempted) and on or before the 15th of January next succeeding (1929), or in case of a newly-elected Governor, on or before the first day of February, the Governor was required to " submit to the Legislature a budget containing a complete plan of proposed expenditures and estimated revenues. It shall contain all the estimates so revised or certified and clearly itemized, and shall be accompanied by a bill or bills for all proposed appropriations and reappropriations * * *." By section 3 of the article mentioned it was provided that " the Legislature may not alter an appropriation bill submitted by the Governor except to strike out or reduce items therein, but it may add thereto items of appropriation provided that such additions are stated separately and distinctly from the original items of the bill and refer each to a single object or purpose * * *." There is some change of phraseology in the executive budget provisions

(Art. VII) in the Constitution effective January 1, 1939. Thereunder the head of each department of the State government (except the legislative and judiciary) is required to furnish the Governor estimates and information as to the requirements of his department, which the Governor is to submit to the appropriate committees of the Legislature; further, the Governor is required, on or before February first in each year, to "submit to the Legislature a budget containing a complete plan of expenditures proposed to be made before the close of the ensuing fiscal year and all moneys and revenues estimated to be available therefor, together with an explanation of the basis of such estimates and recommendations as to proposed legislation, if any, which he may deem necessary to provide moneys and revenues sufficient to meet such proposed expenditures." (The only substantial change is the omission of the requirements as to itemization of the executive budget.) At the time of submitting the budget to the Legislature, the Governor is required to submit (Art. VII, § 3) "a bill or bills containing all the proposed appropriations and reappropriations included in the budget and the proposed legislation, [It is to be noted that itemization applies only to the executive budget] if any, recommended therein" and, as also provided in the earlier Constitution (Art. IV-A, § 3), "the Legislature may not alter an appropriation bill submitted by the Governor except to strike out or reduce items therein, but it may add thereto items of appropriation provided that such additions are stated separately and distinctly from the original items of the bill and refer each to a single object or purpose." It is asserted by the plaintiff that the bill enacted by the 1939 Legislature and permitted to become a law without action by the Governor, violates the last quoted portion of the Constitution.

The General Appropriation Bill for the Department of Agriculture and Markets and the Governor's Appropriation Bill for the same department were printed in the Attorney-General's brief and referred to frequently by counsel on each side to illustrate the claims of the respective parties. I quote in part from the Governor's bill:

## "DEPARTMENT OF AGRICULTURE AND MARKETS

For expenses of personal service in accordance
with the following schedule................    709,900 00
Schedule
Administration
Commissioner of Agriculture and Markets
(O. S.)................................    12,000 00

| | |
|---|---:|
| Assistant Commissioner of Agriculture and Markets (N. S.)........................ | 7,000 00 |

\* \* \*

(These items are followed by similar personal service items covering ten pages.)
Salaries — temporary

| | |
|---|---:|
| Investigators at not to exceed $7 per day; assistants to inspectors at not to exceed $8 per day, and temporary service throughout the department........................ | 7,000 00 |
| Total of Schedule..................... | 719,840 00 |
| Less savings......................... | 9,940 00 |
| Amount appropriated.................. | 709,900 00 |
| For expenses of maintenance and operation in accordance with the following schedule...... | 1,130,100 00 |

Schedule

| | |
|---|---:|
| Traveling expense, of which not more than $2,000 may be used for travel outside the State...... | 139,100 00 |
| Commissioner of Agriculture and Markets, in lieu of all traveling expense................ | 2,400 00 |

\* \* \*

(These two items are followed by ten other items like ' General expense, 8,750.00,' ' Special supplies and expense, 5,250.00.')
General charges

| | |
|---|---:|
| Bovine tuberculosis indemnities, including personal service and other expenses............ | 200,000 00 |
| Bangs' disease indemnities, including personal service and other expenses................ | 300,000 00 |

\* \* \*

(These are followed by four other lump sum items aggregating $418,500.)

| | |
|---|---:|
| Total of schedule..................... | 1,141,095 00 |
| Less savings......................... | 10,995 00 |
| Amount appropriated.................. | 1,130,100 00 " |

The aggregate of the two appropriations by the Governor was $1,840,000. Each of the items and schedules above quoted and described was eliminated in the Legislature's General Appropriation Bill, which I quote:

## " DEPARTMENT OF AGRICULTURE AND MARKETS

For general expenses of maintenance and operation, including personal service, travel outside of State at not to exceed $2,500, the purchase or exchange of not to exceed ten automobiles at not to exceed $500 each and one automobile not to exceed $1,000 and commissioner in lieu of all travel expenses, $2,400 . . . . . . . . . . . . . . . .  204,000 00

For general expenses of maintenance and operation, including personal service, for the following departmental activities:

| | |
|---|---:|
| Animal industry. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 204,000 00 |
| Plant industry, including disease and insect control . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 120,500 00 |
| Control of Dutch Elm disease . . . . . . . . . . . . . . . . . | 92,000 00 |
| Food control and inspection . . . . . . . . . . . . . . . . . . . | 398,500 00 |
| Kosher law enforcement . . . . . . . . . . . . . . . . . . . . . . | 33,000 00 |
| Farm products inspection . . . . . . . . . . . . . . . . . . . . . | 53,500 00 |
| Markets and marketing . . . . . . . . . . . . . . . . . . . . . . . | 83,750 00 |
| Weights and measures . . . . . . . . . . . . . . . . . . . . . . . | 26,250 00 |
| Dog licensing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25,250 00 |

General charges

| | |
|---|---:|
| Bovine tuberculosis indemnities, including personal service and other expenses . . . . . . . . . . | 200,000 00 |
| Bang's disease indemnities, including personal service and other expenses . . . . . . . . . . . . . . . | 300,000 00 " |

The Legislature asserts that its appropriations for the " Department of Agriculture and Markets " complied with the Constitution (Art. VII, § 4), that the two items of the Governor's bill, one of $709,900, the other of $1,130,100, aggregating $1,840,000, were stricken out; thereafter the items quoted from the legislative bill, aggregating $1,740,750 (a saving of substantially $100,000), were added; that each was stated separately and distinctly from the original items of the bill, and referred to a single object or purpose. The added items of the bill were submitted to the Governor as being " subject to his approval." The Attorney-General argues that the Governor's bill was altered in a manner not permitted by the Constitution (Art. VII, § 4). He also partially condemns lump sum appropriations, although the Governor's proposed bill contains many of that type, some of which are, $200,000 for bovine tuberculosis indemnities " including personal service and other expenses;" $300,000 for Bang's disease indemnities " including personal service and other expenses;" $57,000 for farm products inspection " including personal service (of which not to exceed $500 may be used for travel outside the State);" $61,500 for disease and insect control " including personal service;" $100,000 for control of

Dutch elm disease "including personal service;" $200,000 for the division of milk control " including personal service and travel outside the State;" $304,916 for expense of maintenance and operation of the division of employment " including personal service;" $250,000 for the expense of maintenance and operation of the labor relations board " including personal service and travel outside of State." Thus by practical construction by the Governor and the Legislature, it has been agreed that lump sum appropriations are valid. Authority for this view is found in the opinion in *People* v. *Tremaine* (252 N. Y. 27), at page 33: " In the budget bill so submitted were many lump sum appropriations, not itemized, to the administrative departments. Although *the budget* must contain all the estimates of proposed expenditures ' clearly itemized ' the Governor and the Legislature seem to be in accord in the view that the budget bill submitted by the Governor need not be itemized but that it may contain lump sum appropriations." The Governor's budget is a document, distinct from the accompanying bill, designed to outline plans for the expenditures recommended. A suggestion that the Governor and his department heads will not follow the budget to the extent permitted by the reduced amount appropriated is not to be entertained seriously.

Substantially all of the controversial provisions in the Legislature's appropriation bill are similar to those presented in the Department of Agriculture and Markets appropriation. The only authority within this State on the subject is *People* v. *Tremaine* (*supra*). The opinion by POUND, J., concurred in by CARDOZO, Ch. J., LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., states (p. 38): " Long and interesting is the history of the struggle between the Executive and the Legislature for the control of the public moneys. It is, however, so well settled that the State Legislature is supreme in all matters of appropriations that the recital of the details of the strife for legislative supremacy would serve no useful purpose," and (p. 44) " the power to itemize legislative appropriations is a legislative power which it may exercise if it sees fit as long as the matter is in its hands," and (p. 49) " the provision for a budget system is a new and complete article of the Constitution to be read in connection with all other provisions contained therein as the latest expression of the popular will. While it in no way limits the ultimate powers of the Legislature to make appropriations (Art. IV-A, § 4) it regulates the executive and legislative machinery and defines the method whereby appropriations shall be made." CRANE, J., in his concurring opinion says (p. 59): " Personally I can see no escape from the position that the Legislature has absolute control over appropriations. It may make appropriations also upon such conditions and with such restrictions as it pleases. It can create or limit the power of administrative offices. There is

one thing, however, it cannot do and that is implied, if not expressed in our Constitution. It cannot exercise the functions of the Executive." The Legislature, by striking out items and adding others, has reduced the amount sought to be appropriated by millions of dollars. The control of appropriations by the Federal Congress and the State Legislature is plenary. It seems conceded that had the Legislature adopted a different procedure, its plenary power over appropriations, which has always been recognized, could have been exercised. It is asserted that unconstitutional methods were used. Such a construction makes this constitutional provision a practice act rather than a statement of governmental powers. Under the construction contended for by the defendant the Governor retains his constitutional prerogative to veto the added appropriations, while items which he recommended and the Legislature approved became laws without further executive action.

The requests by department heads for ever-increasing appropriations and the resultant mounting cost of government are so well known that it seems improbable that the people of the State, by constitutional enactment, knowingly would place obstacles in the path of the Legislature which is seeking to reduce these amounts. When the Legislature appropriates in excess of the amount which the Governor believes necessary, he has the power to veto. If as asserted that power has been ineffective in the past to prevent unwise appropriations by the Legislature, it will not be more effective to reduce extravagant requests by departmental heads.

The Legislature complied with the executive budget provisions of the Constitution, and the taxpaying public should have the benefit of the reduced appropriations made. An appropriation bill designated by the shibboleth " line by line " is not here presented. Neither of the contesting parties has presented that type of an appropriation bill. Nothing in the Constitution required that the Governor's proposed bill shall be itemized. Itemization is not required under the new Constitution, even as to the budget.

The addition of the following words, " acquisition of land and/or construction of buildings incidental to highway construction, re-construction and maintenance," incorporated by the Legislature in the appropriation for the construction and reconstruction of State highways, and sections 8 to 18, inclusive, in the " general provisions," both as inserted in the Governor's bill and as altered by the Legislature, should be eliminated. This does not affect the validity of the appropriations. (*People* v. *Tremaine, supra,* p. 59.)

CRAPSER, J., concurs with HILL, P. J.

Judgment rendered in favor of the plaintiff, in accordance with the terms of the stipulation, without costs.